USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 2 1 2019

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA     :

        :

      - v. -     :

        :

SAVRAJ GATA-AURA,     :
   a/k/a "Sam Aura,"     :

        :

     Defendant.     :

        :

- - - - - - - - - - - - - - - - X

**SUPERSEDING INDICTMENT**

S1 18 Cr. 759 (RMB)

_SEALED_

## Count One
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### Background

1.　SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, is a citizen of the United Kingdom, who has principally resided in the United States since at least in or about September 2015.

2.　Renwick Haddow ("Haddow") is a citizen of the United Kingdom who principally resided in New York, New York from at least in or about October 2014 through in or about June 2017.

3.　In or about November 2008, the Companies Investigation Branch of the Insolvency Service of the United Kingdom ("CIB"), an agency responsible for investigating serious corporate abuse in the United Kingdom (the "U.K."), disqualified Haddow from serving as a director of any company registered in the U.K. for a period of eight years, through about November 2016. This disqualification

was premised on Haddow's conduct as a director of a company whose investors lost all or substantially all of their investments. As part of Haddow's disqualification, Haddow consented to a schedule of unfit conduct that stated, in part and substance, that Haddow caused or allowed the now-insolvent company to make various misleading statements about its financial position and prospects. In or about December 2008, the U.K. government published an online press release with respect to Haddow's disqualification, including the schedule of his unfit conduct.

4.    In or about July 2013, the U.K.'s Financial Conduct Authority ("FCA") brought a civil action against Haddow and others for allegedly running various unauthorized collective investment schemes, including a scheme involving African land ventures, that raised £16.9 million in funds through, among other things, misleading statements to investors.

5.    In February 2014, the High Court of Justice, Chancery Division, in the United Kingdom, ruled, in substance, that the schemes at issue were in fact unauthorized collective investment schemes.   The ruling was publicized in the British press.

6.    In March 2015, the British Court of Appeal dismissed the appeals filed by Haddow and others with respect to the February 2014 ruling.   The ruling was publicized online.

7.    At all times relevant to this Indictment, Bar Works, Inc. was a Delaware corporation that was principally owned and

controlled by Haddow.  Bar Works Inc.'s principal place of business
was in New York, New York. Bar Works Inc. was incorporated on or
about July 24, 2015.  On or about July 29, 2015, Haddow bought all
20 million shares of Bar Works Inc. for $2,000.

8.    At  all  times  relevant  to  this  Indictment,  Haddow
operated as the principal executive of Bar Works Inc. and related
Bar  Works  entities  (collectively,  "Bar  Works").  Among  other
things,  Haddow  controlled  the  finances  of  Bar  Works,  including
revenue generated by Bar Works's operations and money raised from
Bar  Works  investors,  and  was  responsible  for  the  operations  and
growth of Bar Works throughout New York and the world.

9.    At  all  times  relevant  to  this  Indictment,  SAVRAJ  GATA-
AURA,  a/k/a  "Sam  Aura,"  the  defendant,  recruited  agents  to  sell
investments  in  Bar  Works  and,  in  exchange,  GATA-AURA  received
commissions.

10.   According  to  Bar  Works  offering  materials,  Bar  Works
purported  to  be  a  company  that  adapted  former  restaurant,  bar
premises,  and  other  locations  into  co-working  spaces  with
"workspaces" for rent to the public in exchange for a membership
fee.

11.   In  2015  and  2016,  Haddow  opened  at  least  four  bank
accounts in Bar Works Inc.'s name, designating Haddow as the sole
authorized signatory on each account through account opening forms
or resolutions.  The opening forms for one such account represented

3

that Haddow owned 100% of Bar Works Inc.

12.   In February 2016, Haddow signed Bar Works Inc.'s annual Delaware franchise tax report, listing Haddow as president of Bar Works Inc. and its only stated officer and director.

13.   From approximately October 2015 through at least April 2017, Bar Works raised funds from investors, among other ways, by selling "leases" coupled with "sub-leases" on individual workspaces in different Bar Works locations, including at least six locations in New York City.

14.   To purchase a lease on a single workspace, investors paid a purchase price generally ranging from $22,000 to $30,000. Investors would then generally "sub-lease" their workspaces to Bar Works.

15.   Bar Works typically agreed to pay each investor at least a designated monthly "rental" fee for the lease's duration, generally between 14% and 16% of the investor's investment, regardless of whether a paying customer could be obtained for the investor's workspaces — that is, whether Bar Works received some or no revenue on the relevant workspaces.

16.   From at least about October 2015 through June 2017, Bar Works raised over $36 million from investors.

17.   At least some investors wired money from outside of the state of New York into a Bar Works bank account in New York, New York.

18.   As of in or about April 2017, Bar Works systematically stopped making payments to investors.

### The Scheme to Defraud Bar Works Investors

19.   From in or about September 2015 through at least in or about June 2017, SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, solicited, and assisted Haddow in soliciting, investments in Bar Works leases through the use of material misrepresentations about, among other things, the management and operations of Bar Works.

20.   Bar Works provided potential investors with various offering documents, the content and dissemination of which Haddow controlled, with input from SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant.

21.   The Bar Works offering materials omitted Haddow's name entirely.

22.   Instead, various Bar Works offering materials and leases distributed between at least about September 2015 and January 2017 identified Bar Works's CEO as "Jonathan Black."

23.   As SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, knew, "Jonathan Black" was a fictitious identity adopted by Haddow to conceal his involvement in Bar Works as its incorporator and president.

24.   The FCA's civil action against Haddow for operating unauthorized investment schemes was well publicized as of about September 2015.   As SAVRAJ GATA-AURA, a/k/a "Sam Aura," the

defendant, and Haddow well knew, knowledge of Haddow's control over Bar Works would be material to investors in Bar Works.

25.   SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, and Haddow recruited agents to sell workspace leases in Bar Works and provided them with offering documents and other information that concealed Haddow's control and ownership interests in Bar Works, and affirmatively misrepresented that the non-existent individual named "Jonathan Black" was the CEO of Bar Works.

26.   From in or about September 2015 through at least in or about June 2017, SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, and companies controlled in whole or in part by GATA-AURA, obtained from Haddow and Bar Works over $3.1 million in exchange for GATA-AURA's participation in this scheme.   The payments were made, in part, through wire transfers from a Bar Works bank account located in New York, New York.

## Statutory Allegations

27.   From at least in or about September 2015 through at least in or about June 2017, in the Southern District of New York and elsewhere, SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28.   It was a part and object of the conspiracy that SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

### Count Two
### (Wire Fraud)

The Grand Jury further charges:

29.   The allegations contained in paragraphs 1 through 26 of this Indictment are repeated, realleged, and incorporated by reference, as if fully set forth herein.

30.   From at least in or about September 2015 through at least in or about June 2017, in the Southern District of New York and elsewhere, SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses,

7

representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, GATA-AURA engaged in a scheme to defraud investors by soliciting funds for investments in Bar Works Inc. and related entities through material misrepresentations, which scheme involved the use of wires.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

31.  As a result of committing one or both of the offenses alleged in Count One and Count Two of this Indictment, SAVRAJ GATA-AURA, a/k/a "Sam Aura," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from, proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Assets Provision

32.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

8

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461, to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)


FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

SAVRAJ GATA-AURA,
a/k/a "Sam Aura,"

Defendant.

## SUPERSEDING INDICTMENT

S1 18 Cr. 759

(18 U.S.C. §§ 1343, 1349, and 2.)

GEOFFREY S. BERMAN
United States Attorney

_____
Foreperson

May 21, 2019
Filed First Sealed Superseding Indictment.
U.S.M.J. Debra Freeman