J5T6MOOC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              18 CR 759(RMB)

5    JAMES MOORE and SAVRAJ
     GATA-AURA,
6

7                  Defendants.                Conference

8    ------------------------------x
                                              New York, N.Y.
9                                             May 29, 2019
                                              11:00 a.m.
10

11   Before:

12
                        HON. RICHARD M. BERMAN,
13
                                              District Judge
14
                              APPEARANCES
15
     GEOFFREY S. BERMAN
16        United States Attorney for the
          Southern District of New York
17   BY:  MARTIN BELL
          VLADISLAV VAINBERG
18        Assistant United States Attorney

19   DAVID M. GARVIN, PA
          Attorneys for Defendant Moore
20   BY:  DAVID M. GARVIN

21   RANDY ZELIN, ESQ.
          Attorney for Defendant Gata-Aura
22

23   Also Present:  Special Agent Jordan Anderson, FBI
                     Nathaniel Cooney, Paralegal
24

25

J5T6MOOC

1         (Case called)

2         THE COURT:  Please be seated.

3         I think somebody had made an arraignment for Mr. Moore

4    to appear by phone or video today.  It hasn't happened as far

5    as we're aware.

6         The question to defense is:  Is it okay to waive

7    Mr. Moore's appearance or do you want to wait?

8         MR. GARVIN:  Yes, your Honor.  I spoke with Mr. Moore

9    with the understanding that there was a possibility that might

10   occur.  He made it clear to me that if it did occur, he would

11   like us to go forward.

12        THE COURT:  It's not uncommon I should tell you.

13   Sometimes it works when these video hookups are attempted and

14   unfortunately sometimes it doesn't.

15        First of all, I think the government may have the most

16   information about this, about whether or not Mr. Moore will be

17   here and when he will be here.  Our trial is scheduled for

18   Monday.

19        Do you think he will make it, Mr. Bell?

20        MR. BELL:  The short answer, your Honor, is yes.

21   Candidly he should have been here now and it is our

22   understanding he was on our way to a plane and there was a

23   paperwork snafu --

24        THE COURT:  A glitch.  There was a glitch.

25        MR. BELL:  -- in Florida.

J5T6MOOC

1       The folks in Florida have informed us that he is due

2    to fly up specifically on Friday.  We will look to confirm that

3    once again today.  He should be here on Monday.  They are

4    mindful of the fact that the trial begins on Monday and he

5    should be here.

6       I will note that to the extent he is not here today,

7    there had been an understanding before that it might be

8    difficult to get him on a plane to actually get him here for

9    the pretrial conference.  Likewise, because ordinarily at least

10   at the Florida office of the Bureau of Prisons, it takes about

11   five days' notice to provide for staffing in order for him to

12   be in a facility where he can call into the conference, and we

13   learned that he wasn't going to be here promptly pretty far in

14   advance into that window.  He should be here on Monday because

15   he is due to be on a plane certain on Friday.

16       THE COURT:  Counsel, does that square with what your

17   understand is?

18       MR. GARVIN:  The first half of it with the snafu, yes,

19   your Honor.  The second half the staff has been noncommittal

20   with Mr. Moore.  They told him that they are doing his best,

21   but that was as far as they needed to give him an answer.

22       THE COURT:  As far as I know, Mr. Bell's recitation is

23   correct.  You never know until you know in this business.

24       MR. GARVIN:  We intend to be here Monday morning, your

25   Honor.

J5T6MOOC

1    THE COURT:  Will you need to see him before then and

2    if so, you will be in touch with Mr. Bell to know where he is.

3    MR. GARVIN:  Your Honor, the answer to your question

4    is yes.

5    THE COURT:  You may need to be in touch with the

6    marshals.

7    MR. GARVIN:  Yes.  That is one issue I did want to

8    raise.  Perhaps now would be the appropriate time.  That is

9    that I wanted to furnish Mr. Moore civilian clothes so that he

10    can be brought up before the jury is placed in the stand and

11    then when the jury leaves, he will be taken out of civilian

12    clothes.

13    THE COURT:  Right.

14    MR. GARVIN:  I didn't know if the person to contact

15    would be the marshals or who would be the person.

16    THE COURT:  Normally it is.  Mr. Bell can help you out

17    in that regard.  It is a common practice.  I have seen

18    occasions where counsel bring the clothes actually to the

19    courtroom the same day and the prisoner is able to change in

20    the cell.

21    MR. GARVIN:  We're fine with that, your Honor.

22    THE COURT:  I don't know if you will get to see him

23    before then, but for sure that will happen.

24    MR. BELL:  I have seen that too, your Honor.  I am

25    happy to reach out to the criminal desk at the Marshal's

J5T6MOOC

1    office, because sometimes policies change, and to connect

2    Mr. Garvin with the appropriate person there as well.

3            THE COURT:  Great.

4            I put out an order on May 23rd raising some questions

5    about the trial and then a subsequent trial with Mr. Gata-Aura

6    and wanted to hear if any defense counsel had any concerns

7    about prejudice or if that is what they both want to do,

8    proceed Monday with Mr. Moore and at a some subsequent time

9    with Mr. Gata-Aura.  So we'll start with Mr. Moore since it's

10   closest in time to your client's trial.

11           MR. GARVIN:  Yes, your Honor.  Respectfully Mr. Moore

12   wishes to proceed on Monday morning.

13           THE COURT:  You needn't say more unless you want to.

14           Do I have counsel here for Mr. Gata-Aura?

15           MR. ZELIN:  Good morning, your Honor.

16           THE COURT:  Good morning.

17           MR. ZELIN:  Randy Zelin, Z-e-l-i-n, for Mr. Gata-Aura,

18   who is to my left and your Honor's left.

19           If your Honor please, my client was arraigned on the

20   superseding indictment this past Thursday, May 23rd.  At this

21   juncture, I believe consistent with the colloquy I had with the

22   Court and the government at the time of my client's

23   arraignment, I expect to meet and confer with the government in

24   the not too distant future to discuss both, I guess for lack of

25   a better way of putting it, some open-file discovery or

J5T6MOOC

1      discovery prior to the actual formal filing of Rule 16 demands.

2              I would respectfully submit, your Honor, that at this

3      moment it would be premature for me to posit as far as a trial,

4      a trial schedule, trial readiness and things of that nature.

5              THE COURT:  But it certainly is not Monday?

6              MR. ZELIN:  We will not be able to proceed on Monday,

7      your Honor.

8              THE COURT:  You have no objection with our proceeding

9      with Mr. Moore on Monday; is that a fair statement?

10             MR. ZELIN:  No objection, your Honor.

11             THE COURT:  We're still missing names, places,

12     entities for the voir dire.  We usually have it by now.  We

13     need it to pick a jury.

14             MR. VAINBERG:  Your Honor, I believe we intended to

15     submit that.

16             THE COURT:  When I say names and places.  Names we

17     usually like to show an address.  Not a street address

18     necessarily, but if the person lives in the Bronx or Staten

19     Island or whatever and/or an occupation so the jury doesn't

20     say, Well, I know a Mr. Bell, but it is not the same Mr. Bell

21     that we're talking about.

22             MR. VAINBERG:  Yes, your Honor.  I believe we had

23     filed a joint list along with our proposed voir dire; but if it

24     didn't make it on the docket, we'll submit it to the Court

25     today.

J5T6MOOC

1           THE COURT:  Hold on.

2           THE DEPUTY CLERK:  No, Judge.

3           THE COURT:  We didn't get it.  Christian said we

4  didn't get it.

5           MR. VAINBERG:  We'll file it.

6           THE COURT:  It has the information that I am looking

7  for?

8           MR. VAINBERG:  I believe it contains the names of the

9  witnesses, but not additional information that the Court has

10  requested.  So we'll include information about their

11  occupations.

12           THE COURT:  For the witnesses to be sure their

13  occupations and any places that will be discussed at trial.

14           MR. VAINBERG:  Yes, your Honor.

15           THE COURT:  And any other names that are going to be

16  mentioned apart from names of the witnesses, for example.  They

17  may talk about Mr. Zelin or something like that and so we would

18  have to know who Mr. Zelin is for the jury.

19           MR. VAINBERG:  Yes, your Honor.

20           THE COURT:  Can we have that by, say, 3:00 today?

21           MR. VAINBERG:  Yes, your Honor.

22           THE COURT:  Great.

23           I think then that leaves us with some open motions.

24  With respect to motions in limine, I am deciding them as

25  follows and not necessarily in this order, but there is a

motion to admit Mr. Moore's involvement in forming and

promoting Our Space, which is a competitor to Bar Works.

By the way these things would have to be on your list,

these names, if they aren't already and what are they so to

speak.

During and after the charged conspiracy -- this is the

easy motion because the defense says that Mr. Moore does not

object to the admission of this evidence to complete the story

as to what Mr. Moore did when he left Bar Works.  So that

motion is granted on consent.

This is a government motion.  I think they are all

government motions actually.  There is a motion to admit the

existence of publications and press releases on the Internet

before and through the period of the charged conspiracy, which

referred to or discussed Mr. Haddow's adverse regulatory

history and his real name.  Here, the defense requests that the

Court limit this evidence to the testimony of Mr. Haddow and

any articles Mr. Moore may have made reference to in emails to

Mr. Haddow.

The defense does not challenge Haddow's statement that

he created the name Jonathan Black in part because there were

negative articles about him on the Internet during the period

2014 through 2016.

So this motion is granted in part and denied in part

as follows:  I will limit the evidence that may be admitted in

J5T6MOOC

1    connection with this motion to evidence of the negative

2    Internet information of Haddow to such testimony and documents

3    that would include emails and articles mentioned by Mr. Moore

4    if he were to take the stand for example, and if he weren't as

5    he might reflect in other evidence that is going to be admitted

6    perhaps by an email for example or emails to Mr. Haddow and/or

7    others involved in the alleged scheme.  The admission of other

8    negative Internet materials and articles regarding Mr. Haddow

9    will be denied.

10             MR. BELL:  Judge, may we be heard on that one briefly?

11             THE COURT:  Very briefly.

12             MR. BELL:  Judge, we don't --

13             THE COURT:  So we're not allowing the Internet world

14   into this case because it has bad comments about one person or

15   another.  We're not doing that unless it is limited to as I

16   said and in the fashion I said.  You cannot come in with a

17   whole bunch of Internet information by people we have no idea

18   who they are or articles that are not directly referenced by

19   either the defendant or Mr. Haddow.

20             MR. BELL:  So that is something your Honor --

21             THE COURT:  -- and/or emails.

22             That is the ruling.

23             MR. BELL:  We understand that, your Honor.  Let me

24   give you a little bit of color as to --

25             THE COURT:  I don't need color.  I need to know what

J5T6MOOC

1  you are trying to admit that is not included in that ruling.

2       MR. BELL:  What we were looking to admit, your Honor,

3  is approximately four or five I would say either releases from

4  British regulatory authorities or coverage of Mr. Haddow's past

5  activities that fits in with that negative history.

6       THE COURT:  So that would be excluded under my ruling.

7  If you want to discuss it with defense counsel and see if he

8  agrees, that might be one way to get it in.

9       MR. BELL:  The problem here, Judge, is that as I

10  understand your Honor's ruling, any of those items, their

11  admissibility would be tethered to some documented sense that

12  Mr. --

13       THE COURT:  Frankly I don't understand what you are

14  talking about -- tethered to.  Talk to defense counsel and see

15  if you can work it out.  He may have no objection in which case

16  I would not either.  Otherwise, I do.  If there is a press

17  release by the U.K. securities and exchange commission about

18  him, no.

19       MR. BELL:  Just so that I understand this so we might

20  be able to work around this in our discussions with Mr. Garvin,

21  is your Honor's concern that there would be a prejudice to Mr.

22  Moore who is not mentioned in those materials?

23       THE COURT:  I am concerned about the most obvious

24  example of hearsay and I am not going to let it in.

25       MR. BELL:  Would it be possible, Judge, to blunt

J5T6MOOC

1    against that with a limiting instruction that the parties or

2    that the government could propose that essentially --

3              THE COURT:  You can propose it separately.  First, you

4    should talk to defense counsel and see if what you are seeking

5    to admit is okay with him.

6              MR. BELL:  I understand that, Judge.

7              THE COURT:  Secondarily, you will send me a letter if

8    you fail in that.  I think you will not fail.  But if you fail

9    in that connection, you can make a separate proposal this

10   afternoon.

11             MR. BELL:  I understand that, your Honor.  We will

12   speak to Mr. Garvin about that and put something in.

13             THE COURT:  How do you know?

14             MR. BELL:  Only because he made the motion, Judge.

15             THE COURT:  He made the motion to exclude?

16             MR. BELL:  Well, rather because he opposed our motion.

17             THE COURT:  I thought they were all your motions.

18             MR. BELL:  Correct.  I am sorry there, Judge.  Only

19   because Mr. Moore's counsel had essentially opposed.

20             THE COURT:  So, yes.  We got it.  You will talk to

21   him.  If it works out, it will work out.  If it doesn't, he

22   will make a suggestion.  I am pretty comfortable with the

23   ruling I have made so far.

24             MR. BELL:  Thank you, Judge.

25             THE COURT:  There is another motion by the government

J5T6MOOC

1    to admit Moore's prior business relationships with Renwick

2    Haddow, who is the founder of Bar Works, and the coconspirator

3    in the charged conspiracy, who allegedly with Moore's

4    assistance misled investors about the identity and control of

5    Bar Works.  The defense says that Mr. Moore denies that he ever

6    worked at Rooms to Invest.

7            Incidentally, that would be another item on your list

8    for the jury, Rooms to Invest.

9            Mr. Moore further denies that he ever worked on any

10   project with Haddow or was associated with prior to Bar Works

11   in late 2015.  This is the defense speaking, Mr. Moore did not

12   locate agents for Rooms to Invest.  He owned a parcel of

13   property in Barbados that he offered to Haddow for his Rooms to

14   Invest concept.  Haddow declined the offer.

15           So the motion in this sense is granted.  The Court

16   will allow such testimony as background to show the prior

17   relationship the parties had prior to the Bar Works alleged

18   fraudulent scheme.  The government will in the process need to

19   advise the jury that it is not alleging that Rooms to Invest

20   was a fraud or an unlawful scheme.

21           I am sure you are okay with that; right?

22           MR. VAINBERG:  Yes, your Honor.

23           THE COURT:  So two more.  There is a motion also from

24   the government to admit Mr. Moore's conviction for misprision

25   of felony in connection with the unlawful disbursement to Moore

J5T6MOOC

1    of escrow deposit funds from approximately 1,750 clients of IAP

2    intended for a Florida real estate condominium project.

3          The defense says that Mr. Moore's conviction regarding

4    an isolated conversation that occurred approximately 10 years

5    ago with Paul Oxley -- another name you should have on your

6    list -- does not have any probative value whatsoever on this

7    issue.  It is patently irrelevant and will only confuse the

8    jury.

9          This motion by the government is granted.  The

10   defendant's prior conviction based upon a fraudulent real

11   estate investment scheme is relevant in this case and the Court

12   will permit its introduction through defendant's plea agreement

13   and plea allocution.  This conviction arises out of Moore's

14   role in Inside Track and Instant Access Properties and the

15   introduction of Mr. Moore's experience with Inside Track and

16   Instant Access Properties is admissible to prove knowledge,

17   intent, and absence of mistake.  Assuming as I do that the

18   defense claim is that the defendant had no intent to defraud

19   and that he along with the investors was himself duped.

20         A cite that you might rely on is *United States v.*

21   *Alcantara*, 674 F. App'x. (2d Cir. 2006) and *United States v.*

22   *Francisco*, 35 F.3d 116 (4th Cir. 1994).

23         The last motion is from the government motion to admit

24   Mr. Moore's involvement in founding and operating the British

25   Property Investment Company's Inside Track seminars and Instant

J5T6MOOC

1    Access Properties, which sold educational seminars and marketed

2    real estate property purportedly vetted by IAP to investors.

3            The defense opposes the introduction of this evidence

4    of Inside Track seminars and Instant Access Properties.  The

5    defense argues that Renwick Haddow was never involved in those

6    businesses and those businesses failed in approximately 2008

7    due to the real estate crash of that year.

8            This motion is granted as follows:  The Court will

9    allow the introduction of Mr. Moore's experience with Inside

10   Track and Instant Access Properties as 404(b) evidence to prove

11   knowledge, intent and absence of mistake.  In reaching this

12   conclusion to introduce such evidence, I have relied on Federal

13   Rule of Evidence 403 along with the Second Circuit's

14   inclusionary approach to other act evidence under Rule 404(b),

15   which does allow evidence to be admitted for any purpose other

16   than to demonstrate criminal propensity.

17           Those are the rulings.  I don't know that there is any

18   other issues that we have for today.

19           MR. BELL:  Just a couple, Judge.

20           First, just so that we understand one of the rulings

21   that your Honor made, to the extent that Mr. Haddow testifies

22   that he is familiar or that he was at the time familiar with

23   the particular release or article about his doings in Great

24   Britain, would that fall within your Honor's ruling as in the

25   same way that it would for Mr. Moore?

J5T6MOOC

| | |
|---|---|
| 1 | THE COURT:  What do you think?  You heard the ruling. |
| 2 | MR. BELL:  I did.  But insofar -- |
| 3 | THE COURT:  What do you conclude? |
| 4 | MR. BELL:  I would conclude yes because Mr. Moore and |
| 5 | Mr. Haddow were coconspirators and Count One charges a |
| 6 | conspiracy. |
| 7 | THE COURT:  I don't want to get into specific evidence |
| 8 | in or out.  I thought the rulings were pretty clear.  You can |
| 9 | talk again to defense counsel and see if he thinks it is in or |
| 10 | out.  If you have a difference of opinion, when you get the |
| 11 | transcript and see what the ruling is, then I will give you an |
| 12 | answer. |
| 13 | MR. BELL:  Understood. |
| 14 | Another issue, Judge, is this is something where we |
| 15 | have conferred and reached an agreement but just wanted to make |
| 16 | your Honor aware of it.  One of the things that the government |
| 17 | has to demonstrate is that essentially the substance of the |
| 18 | misrepresentation alleged here that Jonathan Black was the |
| 19 | person who was running Bar Works as opposed to Mr. Haddow is in |
| 20 | fact material.  We intend to call a number of victim witnesses |
| 21 | and among the questions that we would ask them in order to |
| 22 | prove up this element is whether it would have mattered that |
| 23 | someone with and then we would outline Mr. Haddow's regulatory |
| 24 | history was running Bar works.  If they had known that, would |
| 25 | it have affected the way in which they approached the |

J5T6MOOC

1    investment.

2           Ordinarily I think that is a relatively

3    uncontroversial point.  The order of witnesses is such that we

4    may wind up asking witnesses that question before the factual

5    predicate relating to Haddow's actual history is on the line.

6           THE COURT:  It is better to do that the other way.

7           MR. BELL:  Because it is a short trial, there are

8    constraints with witness availability.  My understanding is

9    that Mr. Garvin is all right with it.  So I wanted to note that

10   for your Honor.

11          MR. GARVIN:  Your Honor, yes, the defense is all right

12   with that.  No, the defense will not be taking a position

13   during this trial that that would not be material.  In plain

14   words, materiality of that misrepresentation is not going to be

15   an issue in this trial.

16          THE COURT:  Got it.  Good.

17          Oh, my.

18          MR. BELL:  Sorry, Judge.

19          THE COURT:  This is not going to happen during the

20   trial; is it?

21          MR. BELL:  We're clearing a whole bunch of issues out

22   so we don't have to deal with them later on, Judge.

23          Am I right in understanding your trial day is a 9:30

24   start?

25          the cp:  9:15.

J5T6MOOC

1          MR. BELL:  And we go to 5:00.

2          THE COURT:  4:45.

3          MR. BELL:  Given that, Judge --

4          THE COURT:  Usually we take a short lunch break and I

5     will ask the jury some time around 11:00 and maybe again at

6     3:00 if anybody needs it a bath room break.

7          MR. BELL:  Given that, Judge, just to give your Honor

8     a sense of time, we have --

9          THE COURT:  If you don't have a witness when the

10    witness who is on the stand is finished, then the trial is

11    over.

12         MR. BELL:  We'll be mindful of that, Judge.

13         Our belief is that we should rest some time early

14    Thursday.  That's the way that things project at this point.

15    It may be that in order to both work around a scheduling

16    constraint or two with the witness and to use the jury's time

17    in the best way possible, there may be a point towards the back

18    end where we ask to take a witness out of order just so that we

19    can get them in and out and use the time well.

20         THE COURT:  As a practical matter if you could finish

21    it by Wednesday that will be better.  I don't know if it will

22    work or not, but it would be much better to have that whole day

23    Thursday to devote summation and jury instruction.

24         MR. BELL:  Judge, we have one witness who we're trying

25    to deal with now who is not going to be available Wednesday,

1    but that witness would be even if he is a holdover, a

2    relatively short witness at the beginning of Thursday.

3              THE COURT:  Is he or she a must witness, or is it

4    cumulative of what somebody else is going to say?

5              MR. BELL:  The witness does provide some facts that no

6    other witness does, but we may make a determination depending

7    on where we are and how things have come through.

8              THE COURT:  Yes.

9              MR. BELL:  We want to get this done as quickly as

10   possible.

11             THE COURT:  I know that.  I know how juries react.  If

12   we have that time, you might be able to finish get a verdict on

13   the same day.

14             MR. BELL:  Understood.

15             THE COURT:  It takes however long it takes.

16             MR. BELL:  The schedule is a little bit of an

17   interesting creature because there is one witness and

18   Mr. Haddow who we think will take the most time on direct and

19   through Mr. Garvin's estimate on cross.  There are a number of

20   witnesses before that who will move very, very quickly.  So we

21   are doing the best we can to work within those constraints.

22             THE COURT:  Okay.

23             MR. BELL:  Mindful of that too and because the trial

24   is going to be so short, it may make sense for us to talk about

25   a charge conference timeline now.

1          THE COURT:  No.  We'll talk about that when we talk

2     about it.  We'll see where we are.  But as soon as you finish,

3     I will be ready for a charge conference.  I will distribute to

4     you a draft some time before then enough for you to look

5     through it.

6          MR. BELL:  Understood.

7          There may be, Judge, supplemental requests to charge

8     that we have just based on things that come up within the

9     trial.  We don't anticipate them.  We think we did a pretty

10    thorough job within what the parties jointly submitted to the

11    Court.  But if they do come up, we'll get them in promptly.

12         THE COURT:  I suppose from what you are saying, you

13    wouldn't need the three days, right, for testimony, the full

14    three days?  Monday, Tuesday, Wednesday.

15         MR. BELL:  We are assuming, Judge, that it may take

16    until lunch on Monday to pick a jury.  We don't anticipate much

17    longer than that because it is a short trial.

18         THE COURT:  If we get the jury pool up here.

19         MR. BELL:  If they are up here promptly.  Because it

20    is only a week, we anticipate that there will not be a lot of

21    hardship cases.  Assuming for to the moment that we start, say,

22    at 2:00 or so on Monday afternoon as tends to happen in this

23    courthouse in my experience and we have opening statements, we

24    will get in a witness or two on Monday and then we'll have two

25    full days -- Tuesday, Wednesday and a little bit of Thursday --

J5T6MOOC

1    after which the government would rest.  So it would effectively

2    be a little bit shy of three days.

3          THE COURT:  I get it.  Obviously it takes us what it

4    takes.  I will be here and we're not going to rush the jurors

5    or the defense or the government.

6          MR. BELL:  We have Special Agent Jordan Anderson our

7    case agent here.  This may or may not come up.  It frequently

8    doesn't.  We usually stipulate these things away to the extent

9    necessary.  But to the extent that there are departures,

10   deviations between what is in the 302s and what other witnesses

11   testify to, Mr. Garvin has asked to call Mr. Anderson as a

12   witness on some of those scores.  If he does in fact want to

13   call him, we want to make sure that the Court is okay with

14   Mr. Anderson actually being here as the case agent through the

15   trial.  I don't think there is a sequestration issue, but I

16   note that now so we don't run headlong into it later.

17         MR. GARVIN:  There is no problem from the defense.

18         THE COURT:  It is common practice.

19         MR. BELL:  Is your Honor's jury selection method sort

20   of the standard struck panel type?  Would we look for only one

21   alternate, perhaps two in light of the relatively short

22   duration of the trial?

23         THE COURT:  Let's leave that until Monday.  I am not

24   sure.  I want to look over the submissions, etc.  I am not sure

25   how many alternates we're going to have.

J5T6MOOC

1          MR. BELL:  One moment, please.

2          (Pause)

3          MR. BELL:  Judge, I think that is all we had save for

4    one matter.

5          THE COURT:  Is there anything that I have talked about

6    or that you all know about that I don't know about that can be

7    stipulated instead of a witness for example?

8          MR. BELL:  We're working on a number of stipulations

9    now.  There are any number of custodians we'll happily not have

10   to call.

11         THE COURT:  That is not what I am talking about.  That

12   for sure should be a stipulation.  I mean substantive if the

13   witness were called, the witness would say the following.

14         MR. BELL:  There will be a handful of those as well

15   and we'll discuss it more with Mr. Garvin once we're done here.

16   I think that as it is, Judge, we're looking at a trial that is

17   going to consist of fewer than 10 witnesses and only one of

18   those is going to be of any real length.  We're already I think

19   in a pretty streamlined place.

20         THE COURT:  I am not necessarily thinking of

21   streamlining.  I am thinking if there is no disagreement

22   between the parties, then why not.

23         MR. BELL:  Understood.  As I understand Mr. Garvin's

24   principal defense, which is essentially that Jonathan Black was

25   not real but that his client did not know about that, there are

J5T6MOOC

```
 1   some things we can work around there.

 2             THE COURT:  You talk to him and see.

 3             MR. BELL:  The only other issue, Judge, is were Mr.

 4   Moore here, we would look to have him allocuted on prior plea

 5   offers pursuant to the Supreme Court decisions in Lafler and

 6   Frye.

 7             THE COURT:  I am not sure.  You are more attune than I

 8   am.  I don't know what he needs to be allocuted.

 9             MR. BELL:  Ordinarily, Judge, what we would do prior

10   to the start of the trial is we would --

11             THE COURT:  That might be the perfect thing for us to

12   stipulate to.

13             MR. BELL:  That we cannot stipulate to, Judge.

14             THE COURT:  What do you have to ask?

15             MR. BELL:  What we would allocute Mr. Moore to is

16   whether has received a formal plea offer prior to this.  We

17   would make a representation with respect to that.  What I was

18   merely going to suggest, Judge, is because Mr. Moore is not

19   here now that we do that while we're waiting for the jury pool

20   to come up on Monday.

21             THE COURT:  Is that okay with you, Mr. Garvin?

22             MR. GARVIN:  Yes, sir.

23             THE COURT:  That works for me.

24             MR. BELL:  I meant to say Monday, Judge, if I did not.

25             THE COURT:  So if you could break out the lists in two
```

J5T6MOOC

1  separate pages, one for names and addresses of people and the

2  other for locations, business entities on another list.

3          MR. GARVIN:  Your Honor, may I be heard for one

4  moment?

5          THE COURT:  Sure.

6          MR. GARVIN:  I apologize.  I know the Court was clear

7  but I still have a question.

8          THE COURT:  Frequently that happens.

9          MR. GARVIN:  On the prior conviction for a misprision

10  on a felony arising from the Lake Austin Real Estate deal in

11  Orlando, Florida, the Court made reference that it was rolling,

12  that the government's motion was granted as to I think I heard

13  the Court say the plea colloquy and allocution, but I am not

14  certain.  I apologize.

15          THE COURT:  I said plea agreement and plea allocution.

16          MR. GARVIN:  Okay.

17          THE COURT:  You may want to get a copy of the

18  transcript and go through it and see if there is anything you

19  want.  I think that is it then.

20          Nice to see you.

21          MR. ZELIN:  Your Honor, one quick note with regard to

22  my client, Mr. Gata-Aura.  Your Honor will recall as a

23  condition of the -- two conditions of the bail package that was

24  worked out with the government and so ordered by your Honor

25  this past Thursday, one condition was that my client post

J5T6MOOC

```
1    $5,000 in cash or $5,000 of collateral.  We do have a bank

2    check made payable to the clerk, which we'll bring down to the

3    Clerk's Office.

4            The other condition, which is that two additional

5    cosigners sign off on the bond, I have advised the government

6    that my client's wife and mother-in-law are both present in the

7    courtroom and I will bring them to the clerk to cosign the

8    bond.

9            THE COURT:  Nice to see you all.

10           We're adjourned.

11                              o0o
```