```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                            18 CR 759 (RMB)

SAVRAJ GATA-AURA,
                                          Arraignment
            Defendant.

------------------------------x

                                          New York, N.Y.
                                          May 23, 2019
                                          1:00 p.m.

Before:

        HON. RICHARD M. BERMAN

                                          District Judge




        APPEARANCES


GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
VLADISLAV VAINBERG
MARTIN BELL
     Assistant United States Attorneys


RANDY ZELIN
     Attorney for Defendant


Also Present:

     ERIN CUNNINGHAM - Pretrial Services Officer
     JOLDAN ANDERSON - Special Agent FBI
```

1           (Case called)
2           THE COURT:  Good afternoon.  I think we need to start
3   with an arraignment.  Is that your understanding as well?
4           MR. ZELIN:  It is, your Honor.
5           THE COURT:  Let me get the pronunciation correct.  Is
6   it Gata-Aura?
7           MR. ZELIN:  Yes, your Honor.
8           THE COURT:  May I ask you both if you have received a
9   copy of this document, superseding indictment.
10          MR. ZELIN:  If your Honor please, I did receive a copy
11  of the indictment from the government this morning.  The Court
12  was kind enough to afford me the opportunity to confer with my
13  client prior to the first scheduled arraignment time of noon.
14  I did have an opportunity to review the indictment with my
15  client.
16          THE COURT:  Did you wish to have me read it this
17  afternoon or did you want to waive a public reading?
18          MR. ZELIN:  Respectfully waive a public reading, and
19  we are prepared to enter a plea of not guilty to the
20  superseding indictment.
21          THE COURT:  Mr. Gata-Aura, do you agree with that?
22  First, of all, you went over the indictment with your attorney?
23          THE DEFENDANT:  Yes.
24          THE COURT:  You are entering a plea of not guilty?
25          THE DEFENDANT:  Yes, your Honor.

1       THE COURT:  All right.  Please be seated.

2       MR. ZELIN:  Thank you.

3       THE COURT:  Let's figure out where this is all headed.
4  Mr. Vainberg or is it Mr. Bell?

5       MR. BELL:  Good afternoon, Judge.  Since this is
6  essentially doubles as a presentment as well, it may behoove
7  everybody for the following to happen first: for Mr. Gata-Aura
8  to be advised of certain of his rights, as typically happens in
9  magistrate court, particularly his right to counsel --
10 obviously, he has retained counsel -- and his right not to
11 answer any questions.

12      THE COURT:  If I know Mr. Zelin, and I think I do, he
13 probably has been over all them.  Were there any other issues?

14      MR. BELL:  No, your Honor, just a matter of getting
15 those in the records.  I'm sure Mr. Zelin has been over those
16 as well as.

17      MR. ZELIN:  I have, your Honor.  My client is fully
18 apprised of all of his constitutional rights.  I believe that
19 he understands them.  I do appreciate the government calling
20 that to your Honor's attention.  We would waive any further
21 need for --

22      THE COURT:  Allocution?

23      MR. ZELIN:  -- allocution on the record, if your Honor
24 please.

25      MR. BELL:  Thank you, your Honor.  We will also note

1   that in the case of persons like Mr. Gata-Aura who are citizens
2   of a foreign country, consular notification is often required.
3   We will put on the record here that we have notified the
4   British consulate of Mr. Gata-Aura's arrest.
5           THE COURT:  Because he is a citizen of the UK?
6           MR. BELL:  That is correct, your Honor.
7           THE COURT:  All right.
8           MR. BELL:  What perhaps should happen next is for the
9   parties to be heard with respect to bail.
10          THE COURT:  Before we get to that, I would like to
11  understand the superseding indictment somewhat.
12          MR. BELL:  Sure, your Honor.
13          THE COURT:  It supersedes, as I understand it, an
14  indictment that is currently pending involving Mr. Moore.  Is
15  that right?
16          MR. BELL:  To be clear, the Moore indictment is still
17  pending, it is still active.  These are additional charges as
18  to a new defendant.  They were essentially superseded to this
19  case because they deal with the same set of operative facts.
20  But it is not something that would tend to either disturb the
21  Moore charges nor for today's purposes prompt Moore to be
22  arraigned on the superseder, as Moore is not named within it.
23          THE COURT:  But it may impact it.  That was my first
24  impression.  We have a trial scheduled with Mr. Moore on June
25  3rd.  I was just supposing that I were Mr. Moore's counsel,

1   which of course I'm not, how would I react to this superseding
2   indictment.
3          MR. BELL:  I would suspect, Judge, that at the end of
4   the day Mr. Moore, whose position has been that he has wanted a
5   speedy trial, will not have an application with respect to the
6   scheduling in light of the Gata-Aura indictment, and we would
7   proceed accordingly and Mr. Gata-Aura's case can proceed on its
8   own track.
9          THE COURT:  They are almost identical.  I don't have
10  that kind of photographic memory, but I read the superseding
11  indictment this morning, and it struck me as substantially
12  similar if not the same to the Moore indictment.
13         MR. BELL:  They are, Judge.  To situate things, both
14  Mr. Gata-Aura and Mr. Moore, as alleged, are charged with
15  having assisted Renwick Haddow or partnered with Renwick Haddow
16  and having solicited investors into the business known as Bar
17  Works in similar fashion, having recruited people under them to
18  essentially make investment pitches to investors.  Both are
19  charged with having done so on false pre-tenses, most notably
20  concerning the identity of the management of Bar Works.
21  Factually, your Honor is of course right that they are related.
22         What might make the most sense is this.  It may make
23  sense for your Honor to place upon the docket an order to Mr.
24  Moore's counsel essentially asking whether he has any further
25  application in light of the Gata-Aura superseding indictment.

1   My expectation is that he will not, particularly because he has
2   sought a speedy trial to this point and because the government
3   is not suggesting that the existence of the Gata-Aura case
4   should push Moore's case further into the future or that the
5   two things have to be tried as one trial.
6          My colleague Mr. Vainberg spoke very briefly to Mr.
7   Moore's counsel, David Garvin Esq., this morning and was not of
8   the belief that he had any sort of application to put in.  But
9   it may make sense for your Honor to make an order accordingly
10  just to be safe.
11         Assuming for the moment that Mr. Garvin does not want
12  to order the scheduling of his client's trial, then we are
13  looking at two trials here.  They are two trials that would be
14  pretty short, two trials that would be pretty similar.
15  Assuming of course that they go all the way there, which
16  statistically that may not happen.
17         It seems to me, Judge, that we would be able to
18  proceed apace with the Moore trial, which is scheduled for the
19  3rd, and to schedule further proceedings with respect to this
20  defendant as we ordinarily would, which is to say we can make
21  representations with respect to what discovery there is to be
22  produced, with respect to how long it might take Mr. Gata-Aura
23  and his attorney to review those materials, and set a further
24  schedule for pretrial conference and motions and the like.
25  That, your Honor, respectfully, would be the course that the

1   government sees going forward from here.

2          THE COURT:  You have more information than I if you
3   have spoken to Mr. Moore's counsel.  When I was posing in
4   chambers to myself what might happen, I was thinking that if I
5   were Mr. Moore's counsel, I might want to take a look at all
6   the discovery that gets produced in this case, for example.

7          MR. BELL:  That is a very valid point, Judge.  To that
8   point I would say this.  The discovery is going to be
9   substantially identical because we, in producing materials to
10  Mr. Moore, essentially produced the bulk of what we have with
11  respect to the conspiracy as a whole, which includes both
12  persons.  Between that and the fact that there is not a single
13  indictment that includes both Moore and Gata-Aura, this seems
14  to be going on two parallel but staggered tracks.

15         That said, should Mr. Moore come back in response to
16  your Honor's order that we propose and suggest something
17  otherwise.  Of course, the government would be happy to
18  participate in whatever discussions follow.  But I suspect
19  strongly, given our conversations with Mr. Moore so far as well
20  as his prior position, that we are probably headed for a June
21  3rd trial start with respect to Mr. Moore.

22         THE COURT:  I would modify your suggestion somewhat.
23  I think it would be important to have Mr. Moore's counsel in
24  court with you.  And in Mr. Zelin wants to be here, he is
25  certainly welcome to being here to put on the record these

issues and if he does still want to go forward, that it is very clear.

MR. BELL: To that end, I will note two things. One of those is that we currently have a May 29th pretrial conference scheduled and we may want to fold that into that conference in light of the second issue, which is of course that Mr. Garvin is an out-of-state attorney. He is located in Florida, and it may not be the most efficient thing to bring him up here twice.

THE COURT: That is the schedule, Mr. Zelin, that we have in the Moore case. The next step there is Wednesday, May 29, at 11:00. You are certainly welcome to be here. In fact, I think it would be helpful if you are available. Or if you don't want to come --

MR. ZELIN: Thank you, your Honor. May I have permission to check my phone?

THE COURT: Sure.

MR. ZELIN: I am available on May 29th at 11 o'clock, your Honor.

THE COURT: I prefer to do it that way. I might put out an order something like: In view of the superseding indictment, the conference on May 29th will consider any implications that one indictment might have on the other, if any.

Now, I think you were heading to a discussion of bail.

1  Mr. Bell, is that where you were heading?
2              MR. BELL:  I was, Judge, yes.  The parties have agreed
3  upon a proposed package which I will have Mr. Vainberg, who is
4  closer to it, introduce for you.
5              MR. VAINBERG:  Your Honor, I believe the parties have
6  reached agreement on a package that incorporates the conditions
7  in the pretrial services report along with a personal
8  recognizance bond of $1 million secured by $5,000 in either
9  cash or a confession of judgment against an asset worth more
10 than $5,000, and two co-signers, one of whom we understand to
11 be the defendant's wife.
12             THE COURT:  What else?
13             MR. VAINBERG:  With a time period of 10 days to
14 satisfy those conditions pending which time the government has
15 no objection to the defendant being released.
16             THE COURT:  What about things like his passport?
17             MR. VAINBERG:  As listed in the pretrial services
18 report, he must surrender his passport.
19             THE COURT:  What I am trying to get you to do is
20 enumerate all of the conditions on the record.
21             MR. VAINBERG:  Yes, of course.  He would have to
22 report to pretrial services as directed, surrender his travel
23 documents and make no new applications for travel documents,
24 restrict his travel to the Southern District of New York and
25 the Eastern District of New York, seek or maintain employment

1   as approved by pretrial services, not consume excessive

2   alcohol, not contact the victims of this offense, and not

3   engage in any activity related to the instant offense,

4   particularly investment solicitation, during the pendency of

5   the case.

6           THE COURT: A small point, Mr. Zelin. Is alcohol an

7   issue here? I did I read somewhere that your client consumes

8   alcohol daily. Or am I just misremembering?

9           MR. ZELIN: Your Honor, I'm looking at page 3 of the

10  pretrial services report. It indicates, and I quote, "The

11  defendant indicated no history of mental health treatment,

12  substance abuse history, alcohol abuse or substance abuse

13  treatment."

14          THE COURT: Right. But the very next sentence.

15          MR. ZELIN: "The defendant consented to a urinalysis."

16  Oh, it states that he consumes alcohol. I'm sorry, your Honor.

17  "He states that he consumes alcohol daily." I do see where

18  that is indicated.

19          THE COURT: That raises to me not a red flag but

20  certainly a question. Is there any question, any issue there?

21          MR. ZELIN: Not to my knowledge, your Honor. But he

22  will comply with all of the requirements that were set forth by

23  the government. To the extent that it includes no excessive

24  alcohol, there will not be excessive alcohol.

25          THE COURT: We have pretrial services here, I believe,

1    right?

2           MS. CUNNINGHAM:  Yes, your Honor.

3           THE COURT:  Is that an issue that you all discussed?

4           MS. CUNNINGHAM:  I did not prepare the report.  I'm
5    just here representing the office.  We would just ask that
6    there be no excessive alcohol in case there are any issues with
7    regards to any arrest-related things involving alcohol or any
8    problems at home involving alcohol, and if so, that it be
9    reported to the Court.

10          THE COURT:  When it says report to pretrial services,
11   what does that mean essentially?  Show up in your office, and
12   if so, how often?

13          MS. CUNNINGHAM:  Yes, your Honor.  As directed,
14   depending on the defendant's compliance, he will be required to
15   come to the office.  That could be once a month, that could be
16   weekly depending on how he is doing, or it could be once a
17   quarter, with telephone and web reporting as well.

18          THE COURT:  Mr. Zelin, what is your sense?  For the
19   moment let's assume there were no other case.  What kind of
20   time frame would you see this proceeding on from your
21   perspective?

22          MR. ZELIN:  Your Honor, it was my inclination and my
23   suggestion to the government that the government and I meet and
24   confer.  At this juncture I have absolutely no understanding as
25   to the scope and universe of discovery.  I would respectfully

1    request that I be given some opportunity to discuss that with
2    the government before I commit to any time frames.
3              If I could circle back to the conditions of release.
4    It is my understanding, your Honor, that my client's passport
5    was taken by the government this morning when he was taken into
6    custody.
7              MS. CUNNINGHAM:  Yes, your Honor, that is our
8    understanding as well, that the agent has it.
9              MR. BELL:  Judge, if you like, we can give you an
10   outline of discovery or we can just meet and confer and get
11   back.
12             THE COURT:  I think Mr. Zelin has a good point.  You
13   and he should meet and confer on whatever you want to meet and
14   confer on, discovery to be sure.  That would be a perfect item
15   to take up on the 29th.
16             MR. BELL:  Very good.
17             THE COURT:  As a first item or early item.
18             MR. ZELIN:  Yes, your Honor.
19             MR. BELL:  That's fine, Judge.  Thank you.
20             THE COURT:  Are there any other issues that the
21   government has or the defense, I'll start with the government,
22   before we adjourn?
23             MR. VAINBERG:  Not for the government other than an
24   application.
25             THE COURT:  Yes.

1            MR. ZELIN:  Nothing further from the defense, your
2   Honor.  Thank you.
3            THE COURT:  Is this a speedy trial application?
4            MR. VAINBERG:  Yes, your Honor.
5            MR. ZELIN:  Your Honor, I have had an opportunity to
6   discuss my client's rights with regard to the Speedy Trial Act.
7   My client has authorized me to waive the time between now
8   and -- we were prepared to go out further than May 29th, but
9   certainly between now and May 29th.  I would respectfully
10  submit that your Honor determine that it is with good cause and
11  in the interests of justice for the time to be waived.
12           THE COURT:  I will in fact find under 18 United States
13  Code section 3161 that the proposed adjournment to May 29,
14  2019, joined in by both sides, is appropriate and warrants
15  exclusion of the adjourned time from speedy trial calculations.
16  I further find that the exclusion is designed to prevent any
17  possible miscarriage of justice, to facilitate these
18  proceedings, and to guarantee effective representation of and
19  preparation by counsel for both parties.  Thus, the need for
20  exclusion and the ends of justice outweigh the interests of the
21  public and the defendant in this matter in a speedy trial
22  pursuant to 18 U.S.C. sections 3161(h)(7)(A) and (B).
23           Unless there is anything further, we can be adjourned
24  for today.  I'll see you all on the 29th.
25           (Adjourned)